The court is now in session. Please be seated. Okay, thank you. Good morning. We'll call the case of the American Civil Liberties Union of New Jersey versus the Department of Justice. Well, I think the FBI has been dropped as a party, so we're now with the Department of Justice. So, in any event, let me call on counsel to proceed and I, having made a slight error in the pronunciation of counsel for appellants in the previous case, let me ask for help first. I'd rather than embarrass myself. Nusrat Chowdhury, Your Honor. Yes, Chowdhury, exactly. Thank you. If it please the court, my name is Nusrat Chowdhury and I represent the plaintiff, the ACLU of New Jersey. We ask for four minutes for rebuttal. This appeal, Your Honors, concerns the entire racial and ethnic communities for intelligence collection through a program that the Bureau's own general counsel acknowledged raises serious civil liberties concerns. Yet in response to the plaintiff's request for information to inform public comment on this program, the defendants have made sweeping secrecy claims, which the district court erroneously upheld. The decision below improperly allows the FBI to keep secret the FBI's use of public source information about New Jersey racial and ethnic groups. May I ask you a factual question to start out? Because I know that there were a significant number of documents and responses to your request that were provided by the FBI. Yes, Your Honor. So how many nondisclosures are at stake here? The government produced approximately 250, perhaps 280 documents that the plaintiffs don't contest. There are 17 documents withheld in full that are at issue in this motion. The second secrecy issue that I want to point out for the courts before going into the substantive issues of the case is that contrary to the FOIA's purpose and Congress's intent, the court granted the FBI's request for an entirely secret and one-sided non- adversarial procedure for resolving a critical claim in this case. Plaintiffs claim that the government improperly relied on the FOIA's exclusion provision. Let me ask you a question in connection with that. Only in one place in your brief do you seem to indicate you want us to review that in-camera presentation. Do you want us to review that or are you simply appealing the merits? Your Honor, we appeal the merits and we would like the court to review the substance of what the district court held, but because the district court used the wrong procedure to adjudicate that claim, the proper relief is to vacate the district court's holding and remand for adjudication according to the Glomar-like procedure that we proposed. Well, if we should affirm the procedure the district court used, do you want us then to review those documents to see if the district court properly decided that? Should this court affirm, which we hope the court will not, especially after hearing some of the issues and problems, the serious negative consequences arising from the approach the district court took, yes, we would ask this court to review the ex parte information, but that procedure raised four serious problems that should counsel this court to take a different approach and not to endorse the ex parte categorical approach that the district court endorsed. Will you please explain precisely how your procedure would work in the district court? Having been a district judge for many years, I never had occasion to apply a Glomar-type procedure, nor for that matter was I ever asked to review a declaration of the sort that Hardy has provided here. You refer to your suggested process as Glomar-like, but it's really beyond Glomar, isn't it? No, Your Honor, it is precisely like Glomar applied to the exclusion context. Why don't you start by explaining clearly and concisely what the Glomar procedure is? Yes, happy to, Your Honor. And how it would work. What the defendants should have done is issued a statement identifying... No, answer my question, which is, what is the Glomar procedure? Right, the Glomar procedure, Your Honor, is when the government issues a response to a FOIA request, identifying the proportions of the request that seek excludable records and identifying the specific exclusion at play of the three that are statutorily defined. The plaintiff would then challenge that invocation by explaining why the terms of that specific exclusion wouldn't apply, for example, because the government had officially acknowledged the records at issue, and the district court would then adjudicate and resolve that question of whether the government properly interpreted the exclusion provision. That would result  and would inform adversarial briefing before this court. That is precisely what courts have done for decades in the Glomar process, since the D.C. Circuit decided, Phillipi v. CIA, more than 20 years ago. That that procedure is time-tested and it's used routinely. And the district court below didn't acknowledge that it even considered the proposal to apply that procedure to the Glomar case. That decision was wrong. First of all, there is nothing in FOIA that suggests even remotely pursuit of the kind of process that you're suggesting. That's incorrect, Your Honor. The sponsoring representative textually, Your Honor, the text supports this approach. Glomar is completely court-invented, right? But Your Honor, the text of the exclusion provisions all indicate that the purpose for the exclusions is to protect the existence or nonexistence of certain records. All three of the exclusion provisions identify categories of records that if they're officially acknowledged, the government can't rely on the exclusion. And that is precisely what the sponsoring representatives of the exclusion provision indicated in their statements on the record. They each cited the D.C. Circuit's decision in Phillipi and indicated the purpose for passing the exclusion provision was to permit criminal law enforcement agencies to use the Glomar provision. Until then... Did you advance this public and adversarial process that you are urging upon us in your blue brief or did you wait until your reply brief? No, Your Honor, it was in the blue brief. Could you cite me to where... Yes, Your Honor, I believe it is after page 42 to the end of our brief. Addresses the problems with the district court's adjudication and lays out the Glomar procedure that we propose. In particular, the problems with the district court's procedure are laid out in that section as well. You know, one of my problems with your Glomar procedure where you're saying the agency doesn't have to say any documents are covered by the exclusion because that in itself would be information. The purpose, I gather, is to say if there were any documents covered by the exclusion, they were properly excluded. Your Honor, the government asserts in their brief that they can protect the secrecy of their reliance on an exclusion. But that interest is protected when they don't have to acknowledge the existence or non-existence of excludable records. Okay, but what concerns me is that this is basically an advisory opinion. And we don't give advisory opinions. You're saying if they had any documents that shouldn't have been excluded, we want to know what they are. And they're saying, well, all the... We aren't saying if we had excludable documents or if we did not rely on the exclusion, but if we had such documents, we would have properly excluded them. It's never, never land. It's not based on reality. It's an advisory opinion, and we don't give advisory opinions. Respectfully, Your Honor, we disagree for two reasons. First, the problem here is the government may be relying on exclusions with unfettered authority. And what we seek is not an... That's why an in-camera review by the district judge. And we've got to give credibility. I mean, we all have... Well, Judge Smith and I were... Judge Slover practiced before many of them. She knows how difficult district judges can be. But we... You know, the system needs to rely upon these judges, and I think we are justified in relying upon them. Your Honor, with all due respect to district judges, in the GLOMAR process itself, the opinions issued are not advisory. They constrain when the government improperly or properly relies on certain parts of the FOIA to keep information secret. We seek the same procedure here. That public and adversarial process would result in opinion determining whether or not the government is properly relying a part of the FOIA to keep information secret. Did you say this was on page 42 of your brief? The section discussing the GLOMAR procedure starts on page 42. Well, you refer to a GLOMAR-like procedure. We refer to GLOMAR-like, Your Honor, because GLOMAR itself was founded in a case involving Exemption 1 of the FOIA. We seek application of that procedure to the exclusion context. And to be clear, I'd like to address the Court's attention to a district court opinion we did not cite in our brief, Memphis Publishing Company v. FBI. This is 879 F sub 2nd 1, District of D.C., a 2012 case, in which the district court did... 879 F sub 2nd 1, District of D.C., 2012. And I cite that case because the district court followed precisely the procedure we propose here. It adjudicated a government GLOMAR response to the plaintiff's request for review of whether the government relied on an exclusion. There was public adversarial briefing prior to any kind of ex parte in-camera procedures. And what we oppose here is that the district court set a categorical rule that only ex parte procedures would be used to resolve FOIA exclusion claims. And that is contrary to the presumption in the weight of FOIA authority in favor of public and adversarial adjudication. This is the D.C. Circuit's decision in Phillipi, the 2nd Circuit's decision in Wilner, the 9th Circuit's decision in Wiener, all of which we cite in our brief. Let me take you to another issue, if I may. And that is the question of good faith, well known. Have you adduced anything anywhere in the records suggesting that the FBI has shown anything in the nature of bad faith? Your Honor, we do not allege bad faith. What we allege is the disclosures in this case show that the government improperly withholds the kind of information we seek here. And it's very limited information that the plaintiff seeks. We seek, turning to the first issue in the case, the FBI's use of public source census data about New Jersey racial and ethnic communities. But it's public source. Why do you need it? Because the information we seek is which communities, the identity of the communities the FBI is targeting for improper intelligence collection and profiling. You don't want the public information. You want to know what they're doing with it. You want to know their use of it. And that's the very basis of their contention that contests your right to that information. That's not entirely correct, Your Honor. The government's claim is broader. They claim that we seek information about how the FBI selects data, how they analyze it, to what uses it's put. We seek only the information, the evidence, about the identities of the communities targeted. And let me point, Your Honor, to the record... And in some instances, that could by itself, in some instances, reveal specific investigatory focuses. Not according to the submissions the defendants have provided in this case. Here they make sweeping document-based arguments that disclosure of any information from any of the documents withheld in full will reveal the scope or focus of investigation. This is a confession. I spent a good part of my Saturday afternoon carefully reading the Hardy Declaration rather than watching the Penn State football game, save for a few moments, which tells you what a boring life I lead. Point me to something, please, in the Hardy Declaration that is less than the specific information that you believe, not only that you want, but that you believe. Yes, Your Honor, if you look at the record pages, the joint appendix, pages 139 to 140 and 140 to 141, you'll see that the government's descriptions of the domain intelligence notes, one of the types of documents... Note 10? The domain intelligence notes? Note 10 and note 11. They are nearly identical. And nowhere in there is there a description of public source data, where it appears in the documents consist of public source data. Yet we know from the characterizations of the defendant's Vaughn Declaration, Vaughn Index, and from the partially disclosed note, which is located at joint appendix 601 to 14, that there is some limited census data in the background section and the mapping section of these documents. But there's no description of where they appear or why...segregation and disclosure of that very limited information would reveal information that would harm investigation. You just referred to the background section, is that correct? Yes, Your Honor. And with respect to intelligence note 10, Hardy declares the background section provides some historical context and previous activities of the group organization and their activities, both in the Newark area and in other locations. That is information we explicitly do not seek. All we seek from that background section is the use of census data. And looking at joint appendix 601 to 14, particularly joint appendix 611, shows how that information appears in domain intelligence notes 10 and 11. That partially released note about the MS-13 gang includes population statistics about seven or eight Central American populations and various Latino populations in New Jersey. Disclosing simply the fact that the FBI is using Latino communities' census data doesn't disclose anything unknown about any particular investigation of a terrorist threat or criminal threat. And that's because... Why do you want all this? I'm still trying to figure out what the ACLU is really after. You've done this in a number of circuits, right? Yes, Your Honor. How many? Well, we filed FOIA requests to 34 FBI field offices around the country, and Your Honor, the information is important. Mr. Hardy's been busy then, I take it. Well, or not, because as we mentioned, the declarations are nearly identical in their description of numerous documents in this case. In fairness, and again, I'm someone who's never read a declaration of this kind before, and granting you the argument you're making with respect to deficiencies. I mean, it goes through section by section, including endnotes, and a discussion for why endnotes would reveal much more than the FBI. But according to the D.C. Circuit's decisions in Campbell and Sussman, they're required to show how disclosure of the category of information we seek will cause harm. And to go back to Judge Sloviter's question, this information is of critical importance. The FBI has, as we've shown in Joint Statement, a memo disclosed from Michigan, opened suspicionless intelligence collection investigations about racial and ethnic groups. The Michigan document, which we discuss in our brief, shows that the FBI is collecting and using the data of Middle Eastern and Muslim populations in Michigan based on nothing more than an unsubstantiated assumption that because those communities share national origin and religion with unnamed, with suspected terrorist groups overseas, that their intelligence should be collected by the FBI. We need to know which communities the FBI is targeting in New Jersey. Why? That's been Judge Sloviter's question all along, and I'll echo it, and also ask you then, why are not individual remedies at law that may lie for the specific individual victim of misused data suffice here and outweigh the kind of invasion, probably the FBI would characterize it as, of intelligence information? Well, Your Honor, to be clear, here, this is a FOIA case. We're enforcing the right for plaintiffs has a right to information. Well, that's the broad purpose of FOIA, I understand, but we're also dealing with specific statutory exceptions and exclusions, which is what this case is all about. Your Honor, this case is about identifying the communities the FBI is targeting, and individuals in those communities don't even know their intelligence is being collected because they don't know their communities are being targeted. So the remedy at law that Your Honor envisions isn't possible because the government has shrouded this program. Your Honor, the program is shrouded in secrecy. And this case is about... Well, shouldn't it be shrouded in secrecy when you're dealing with an agency that deals with terrorism? One wonders these days if anything is shrouded in secrecy given the era of Snowden et al. Your Honor, this Court's opinions in Abdelfattah and Davin, the D.C. Circuit's decisions, the Supreme Court's decisions in National Labor Relations v. Robbins Tower emphasize the importance of the FOIA to disclose and uncover information about government abuse and... But there's at the same time, after the events in Boston in April, we can see how important it is that the FBI keep track of some of these terrorists and maybe keep a little better track of them than they have done. But this FOIA, Your Honor, is about finding out which communities the FBI is tracking without suspicion of wrongdoing, and that is the authority... Well, isn't some of this investigation looking around because you don't have to have a smoking gun to know that there is a particular threat, right? And sometimes you have to look through where potentially the threat is coming, maybe coming from in order to find it. And so that you don't have suspicion of a particular plot when you start your investigation. Is that such a terrible thing? Your Honor, it is when it violates the equal protection rights of American communities. And according to the Fifth Amendment, the FBI cannot target Arabs in Michigan or Latinos in New Jersey simply because they share race or ethnicity with criminal suspects for whom there may be evidence to give rise to reasonable suspicion. That is impermissible. And it's  You've responded to Judge Slowiter's question about pursuing these requests in other circuits, specifically in other field offices. She said 134? Oh, 34, Your Honor, 34. But in any event, probably the most prominent at this point is that leading to the Sixth Circuit's recent decision. In reading your 28J, is it your contention that the Sixth Circuit case is distinguishable from ours or wrongly decided or both? Your Honor, it is wrongly decided. It is distinguishable only to the extent that that court didn't have before it the Exemption 1 and Exemption 7E issues here. The point that we tried to make about Why would they make a difference? Excuse me? Why would they make a difference if they had had it before then? Well, just to answer the question about the legal issues that are different, they shouldn't make a difference because the district court here reached the 7E and 1 issues with an inadequate factual record. And so legally that decision should not stand and this court should find that there wasn't even an adequate factual record. So the claim boils down again to an Exemption 7A claim to withhold the public source information that the plaintiff seeks. That decision was wrong, Your Honor, because the Sixth Circuit deferred to the Hardy Declaration despite its deficiencies which were similar to those we point out here. It did not in that case, just as it doesn't here, describe how disclosure of the specific information we seek, the FBI's use of census data, would reveal information about investigations. Counsel, we've gone more than 11 minutes beyond your time, which is probably the practice of this court more than the exception, but in any event, we'll have you back on rebuttal. Thank you. Ms. Dorsey, I think I've come upon a name even I can pronounce. Glad to make it easy on you, Your Honor. May it please the Court, Katherine Dorsey on behalf of Defendant Appley. I'd first like to address the exclusion issue that you were talking about with opposing counsel. The subsection C. That's correct, the 552C. Just to clarify one thing, one question you were pursuing with opposing counsel, plaintiffs did make their request for a glow-in-the-light procedure in this court in their blue brief. However, they did not raise the issue in the district court. I apologize for the ambiguity. That is what I meant, and I blew it. Thank you. Yeah, they didn't raise it in the district court until their reply brief and after, I believe, that the Defendant Appley's had already filed their in-camera ex parte brief. What do you think they want? That is a bit of a mystery, Your Honor. What we think they want, I presume, because if they were really just seeking the public source information, they wouldn't need to file a FOIA request. It's public information, and they could get it. What we think they're seeking is how the FBI selectively compiles public source data and how they use it in their analysis, just as the Sixth Circuit recognized in its opinion. Release of that type of information is problematic because it could tend to reveal information that is used in enforcement briefs proceedings and would therefore impair potential... And I'm sorry, I didn't hear the first word. In what briefs? In enforcement proceedings. In enforcement proceedings, yes. And so that within a 7A exemption that the FBI could withhold that information because it would threaten to impair future enforcement proceedings. And the Glomar response I'd like to address, the Glomar-like response that they suggest would not work here for a number of reasons, both theoretical and I'd like to give the Court a practical example as well. That would be great. Let me start with the practical example then. One example would be you have organized crime, which often uses FOIA to try and get information. I didn't hear that word. Organized crime and often uses the FOIA to try and solicit information to figure out what the FBI is doing. So let's say we have an organized crime and they think there's a snitch in the organization. Who's the they? Let's start with the they. The members of the organized crime unit. So the head of the organized crime unit has each individual within that network submit a FOIA request to the FBI asking for records in their name. Now let's say there are three members of the organization. The FBI says to numbers one and two, we have no records. Then they say to number three, we cannot confirm nor deny whether we have records. Rather inconsistent response across the board. Right. And that tells them right there that a C2 exclusion for a confidential informant was invoked. Even if they don't have to identify the exclusion. And then the organized crime knows who the snitch is. They know who was informing because of that different record. Different response. Let me take you back to the Glomar-like procedure here. Because part of what I was wondering was how this would work. Is it your understanding that what the ACLU proposes is a typical Glomar procedure? Or are they asking for more? I think it's similar but different. I mean obviously in the Glomar context you do have to identify a particular exemption. Which necessarily gives information to the requester about the kind of information that's at issue. And here they also said you'd identify the particular exclusion. Well the problem with exclusions is they're limited to three categories. Ongoing investigations, confidential informants, and C3 for classified records pertaining to intelligence, counterintelligence, or international terrorism. So that's a much smaller subset than the exemptions cover. So right there by identifying that one of those exemptions or exclusions is at issue, that necessarily gives the requester more information right there. So in that sense it's more than Glomar because it gives the requester more information. And the other problem is according to the FOIA statute, records that are subject to an exclusion are quote not subject to the requirements of FOIA. And so it's more protected the exclusions were intended to be more protected than Glomar. That's why FOIA was amended in 1986 in part because there were already Glomar responses available then and Congress determined that that was not sufficient to be protective of the kind of information at issue here. And the Sixth Circuit discussed that also in its opinion. And as a practical matter the Sixth Circuit also discussed this. Plaintiff's proposed procedure discussing in hypotheticals and talking about what may or may not be at issue provides less coherent review of the issue than the district court reviewing an ex parte in camera declaration which discusses the concrete information at issue. Do you think the Sixth Circuit decision was right across the board? Yes we do Your Honor and we would urge the court to follow that decision. Isn't it very likely in every case that the excludable doctrines are also protected by one of the exceptions? Doctrines or documents? Documents. The excludable documents are also protected by one of the exceptions. That is often the case I'm not sure whether that would 100% but that is often the case so if for example the government invoked an exclusion and an ex parte in camera and the district court decided that it was improperly invoked then the government might try and withhold it under an exemption nevertheless. And in response to plaintiffs made an argument that there's a fear here about there needs to be an opportunity to review the exclusions because otherwise the government could be invoking them improperly well of course there is the opportunity for the district court to review that in camera ex parte declaration but also I would like to point out that exclusions are just very rarely invoked and in fact there is an internal process within the government that before an agency invokes an exclusion it has to go through the Department of Justice and have that exclusion, the suggestion to reviewed before it can actually decide to invoke the exclusion so there's also an internal process and again they are very rarely invoked. If the court has no further questions on the exclusion issue I'd like to briefly touch on the exemptions. Plaintiffs primarily point to I think they said there was no allegation here of bad faith in terms of the Hardy Declaration but they point to what they refer to as the contradictory evidence in that the FBI has released similar information and the Hardy Declaration specifically addresses this at page 909 of the Joint Appendix and Mr. Hardy explained that each office faces different threats in each domain and so each document needs to be reviewed in the context of that domain and so even if there's similar information that may be released in one location that doesn't necessarily mean that that same document or similar information could be released in another domain and also there's sometimes an investigation may be ongoing in one domain, it may be closed in another and an example of this is in this very case is the domestic intelligence note number 9 which here the FBI released in part because it could and it talked about how they were able to release some of the public source information about the Latino communities because of the fact that the investigation that was well known that the MS-13 gang was being investigated and so they were able to release that information and I think that also shows that the FBI's good faith here in that where they could release information including public source information they did and the Hardy Declaration also addresses specifically the public source information and why it couldn't be released here because it tended to reveal the targets or the focus of that investigation and I'd point the court to the Joint Appendix at 127 to 141 that's discussing domain intelligence notes and also 907 of the Joint Appendix discusses the public source information and the baseline assessment and the EC and 910 to 911 discussing the maps and if this court upholds the exemption on the 7A grounds there would be no need to even address the exemption 1 or 7E. This court has no further questions we would ask this court to affirm the judgment below. Let me ask you is it unconstitutional for the FBI to investigate a certain community for instance the republic where the Tsarnaevs went. The republic where the Tsarnaevs at least the older brother went. And Tajikistan Tajikistan I think where is it contrary to constitutional standards for the FBI to investigate an ethnic community of say Tajikis without a specific investigation in mind that they want to conduct? Well what the Domestic Investigations and Operations Guide of the FBI sets forth is that the FBI cannot investigate solely based on race or ethnicity but they can open an assessment or investigate they don't have to have a particular identifiable factual basis but they can investigate a community if ethnicity or race is just part of and a reason If I understand Judge Roth's question correctly the FBI could not target a community of Tajikis solely because they're Tajikis without anything else. That's correct And that would be consistent with FBI policy. That's correct. Obviously something well short of probable cause is necessary probably something well short or at least short of reasonable suspicion is necessary but there would have to be some information related to the prospect of crime or terrorism or the like. That's correct. That would permit the FBI to look at residents of or citizens of or a community of Tajikis That's correct Your Honor. That's exactly why the 6th Circuit recognized that information about which communities are being investigated in the context of investigatory documents would tend to indicate what the FBI is doing what they're investigating in terms of criminal targets and focus So the FBI can't go down through the alphabet on a slow day and say well we'll start with the Azeris today and eventually get to the Tajikis. That's correct Your Honor If there are no further questions we would ask this court to follow the decision of the 6th Circuit and affirm the judgment below. Thank you very much Mr. Derry I blew it in my earlier question and Ms. Dorsey corrected me. It is correct that the ACLU did not argue this before the District Court but instead raised it in its reply brief That is true Your Honor. We raised it in reply. We actually before raising it in reply presented the proposals of the government. The government rejected it and was given an opportunity to address their concerns in a sir reply And on the Glomar issue Your Honors, the CIA regularly uses the Glomar procedure to neither confirm nor deny the existence of records. Well that was a CIA case wasn't it originally? Your Honor, the FBI's secrecy interests are no different than those the CIA asserts in Philippi and in the legion of decisions implementing the Glomar procedure. What's good enough to protect the CIA's interest in protecting the secrecy of its records is good enough to protect the FBI's interest in the secrecy of excludable records. And I point this court to the decision, a recent decision of the DC Circuit, ACLU versus CIA 710 F3 422 DC Circuit 2013 which shows how that public adjudication process leads to opinions that are anything but advisory but limit the government's interpretation of the FOIA to improperly exclude information. What was that site again? That's ACLU versus CIA 710 F3 422 DC Circuit 2013. And to be clear, we do not seek more than what Glomar provides. We seek exactly the procedure followed by the DC District Court in Memphis Publishing Company which I cited earlier and what takes place in ACLU versus CIA. And on page 47 of our brief, the blue brief, footnote 30 we cite the statements of the congressional sponsors of the FOIA exclusion provision that talk about the Glomar procedure and why the exclusion provision would authorize the FBI and law enforcement agencies to do what the CIA already had the power to do under Glomar, which is to neither confirm nor deny the existence of requested records. Three more points, Your Honor. We do not need bad faith or to show bad faith for this court to review plaintiff's exclusion claim. The FBI is in charge of internal procedures that ensure we don't exclude documents improperly. But the reason that the Glomar procedure was created in the first place was because the courts determined that there needed to be a public and adversarial process to help check government overreach. In your preparation research, have you encountered any instance in which this court, the Third Circuit, has even addressed the use of the Glomar procedure? This circuit has not yet. Four circuits have, and we cite those circuits in our brief. I'm going to ask that both sides provide us with just a very brief letter brief addressing Patterson versus FBI 893 Fed Second 595. This is a 1990 decision of this court, which may or may not have implications for your request relative to Glomar. But in that case, we suggested that we were satisfied with the Vaughn Index and those situations where we might want more. And so with that precedent in mind, I think it would be helpful. I know you didn't address in your brief. I don't believe that the Department of Justice raised the case in their brief either. Okay. Happy to do so, Your Honor. The second point I wanted to raise is that the FBI itself invited public comment about the use of the FBI's new authority to conduct suspicionless assessment investigations of racial and ethnic communities. And the public cannot provide that comment without the information plaintiffs seek in this FOIA. This is a limited FOIA to inform the purpose of providing the public comment the FBI itself sought. So that's why you're doing this? Yes, Your Honor, that is exactly because we had asked you why you're doing it. I apologize for not properly answering your question before, but that is why. It's to provide comment about the scope of the assessment authority and its impact on racial and ethnic groups. And to see whether... It's been a while since I've written a brief. Did you say that in the briefs? Yes, Your Honor. That is in our briefs. That's an important point. It is an important point. And we need to know how the FBI is using that authority and whether it's leading to abuse. That is the purpose for which the FOIA was passed. My final point, Your Honor, is just to respond to the government's interpretation of Domain Intelligence Note Number 9, the partially released memorandum in this case. The point of that memorandum is not to show bad faith, or it is simply just to show that the granular information that we seek can be segregated and disclosed. That partially released document is a window to the others that the government withholds in full. And the limited census data and population statistics can be stripped out without any of the information about the identity of the target, witness statements, all of the types of evidence that courts have in the past found are covered by Exemption 7a. You're suggesting that it was possible to do that with respect to Note 9? That Note 9 shows what's possible with respect to the notes withheld in full. Why should we immediately infer that because it was possible in Note 9, it's possible with respect to the other DINs? Because the government asserts that it's not possible because it will reveal the scope of investigation. I don't understand the government to have asserted across the board that it's not possible. Obviously they can't assert that if they have made certain revelations with respect to Note 9. They have asserted it's not possible with respect to the other notes in this case. That's what the Hardy Declaration has said. But doesn't your point assume that all DINs are fungible? It assumes that granular information will not reveal other information about investigation targets that could lead people to circumvent investigations. What do you mean by granular information? Simply that statistics like what is on JA-611, Guatemalan population, X number, Dominican Republic population, foreign born residents of Honduras. That is limited census data being used in these documents and that is all we see. We don't want information around it. We don't want the resulting analysis of that information. It's just the statistics that are shown on Joint Appendix 611. Very good. Thank you very much, Ms. Chaudhuri. Thank you to both of the counsels. It's a very interesting case. It's obviously an important case. More than that, it is an important issue throughout the country being raised by the ACLU and others. So we thank you for your very helpful arguments. I'll ask that a transcript of this argument be arranged as well. And I would, as I suggested... We can get it. We just want to have one prepared. I'd also ask that within ten days you just give us a brief letter brief addressing the Patterson case. Thank you very much. And we'll ask the clerk to adjourn the proceedings.